**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Hongjun Peng,

Petitioner,

v.

John E Cantu, et al.,

Respondents.

No. CV-26-05167-PHX-JZB

**ORDER**

Pending before the Court is Petitioner Hongjun Peng's "Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Request for Expedited Relief" ("Petition for Writ of Habeas Corpus"). (Doc. 1.) In the Petition, Petitioner asserts that the July 10, 2026, bond redetermination hearing he received pursuant to *Peng v. Cantu*, 2:26-cv-04329-LCK, doc. 10 (D. Ariz. July 6, 2026) ("*Peng I*") was constitutionally deficient. (*Id.* at 2–4.) Because the Immigration Judge's ("IJ") decision to deny bond was legally and constitutionally deficient, the Court shall grant the Petition and order that Petitioner be immediately released from Department of Homeland Security ("DHS") detention.

**I. BACKGROUND.**

Petitioner is a native and citizen of the People's Republic of China. (*Id.* at 7.) Petitioner, with his minor son in tow, entered the United States on April 18, 2023. (*Id.*) After being processed by immigration authorities, Petitioner was released into the United States on an Order of Release on Recognizance. (*Id.* at 8.)

Following his release, Petitioner openly resided in the nation's interior. (*Id.* at 8.)

During this time, Petitioner maintained employment, paid taxes, established ties to the community, and maintained relationships with family in the country—including his mother and sister. (*Id.*); (doc. 10 at 03:15–05:55, 06:24–07:30.)

On April 24, 2026, Petitioner was detained by U.S. Customs and Border Protection. (Doc. 1 at 8.) Petitioner was ordered removed by an IJ on June 1, 2026. (*Id.*) Petitioner timely appealed his order of removal to the Board of Immigration Appeals. (*Id.*) That appeal remains pending. (*Id.*)

On June 18, 2026, Petitioner filed a petition for writ of habeas corpus in *Peng I*. (*Id.*) On July 6, 2026, the *Peng I* court granted Petitioner's petition in part. (*Id.*) Specifically, the *Peng I* respondents were required to provide Petitioner with a bond redetermination hearing. (*Id.*); *Peng I*, 2:26-cv-04329-LCK, doc. 10.

Following *Peng I*, Petitioner was provided with a bond redetermination hearing on July 10, 2026. (*Id.*) During the hearing, Petitioner, in arguing that he was neither a flight risk nor a danger to the community, provided the IJ with numerous pieces of evidence. *See generally* (doc. 10.) This evidence of his child's medical condition, family ties, ties to the community, and payment of taxes. (*Id.*) Even with this evidence, the IJ determined that Petitioner was "an extreme flight risk" due—in large part—to his order of removal. (Doc. 7-1 at 2–3.)

Due to the July 10, 2026, bond redetermination hearing, Petitioner filed the instant Petition. (Doc. 1.) In his Petition, Petitioner asserts the following three claims for relief: (1) the July 10, 2026, bond hearing violated his Fifth Amendment Due Process rights; (2) that his continued immigration detention violates the Fifth Amendment; and (3) a further bond hearing would not be an adequate remedy. (*Id.*) The Court shall only address Petitioner's first claim for relief.

## II. 28 U.S.C. § 2241 WRIT OF HABEAS CORPUS.

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ"

makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[1] challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Because Petitioner only challenges the bond hearing he received, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

## III. DISCUSSION.

The crux of the instant dispute is whether Petitioner, who is detained pursuant to 8 U.S.C. § 1226(a), was provided a constitutionally and legally adequate bond hearing. To answer this question, the Court must first address whether it has jurisdiction to hear this matter. If so, the Court will then address the merits of Petitioner's claim.[2]

---

[1] Undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent, such as *Avilez v. Garland*, which specifically stated:

> This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different," "repugnant," "hostile," and "opposed," . . . while the word noncitizen, which is synonymous, . . . avoids such connotations. Thus, noncitizen seems the better choice.

*Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (cleaned up).

[2] Although Respondents failed to address Petitioner's assertion that exhaustion of administrative remedies should be excused, *compare* (doc. 1 at 13–14) *with* (doc. 7), the Court has nonetheless reviewed this matter and agrees with Petitioner for the reasons stated by numerous courts throughout the Ninth Circuit. *See, e.g.*, *Ramirez v. Noem*, 817 F. Supp. 3d 1037, 1051 (D. Nev. 2025) ("Because Plaintiffs' constitutional challenge to their detention is necessarily beyond the scope of the BIA's review, the BIA's position on the

**A. Jurisdiction**.

Respondents claim that pursuant to 8 U.S.C. § 1226(e) "[f]ederal courts do not have jurisdiction to review immigration judges' decisions in bond proceedings and Federal courts 'may not second-guess the immigration judge's weighing of the evidence.'" (Doc. 7 at 2) (quoting *Calmo v. Sessions*, No. C 17-07124 WHA, 2018 U.S. Dist. LEXIS 98718, at *11 (N.D. Cal. June 12, 2018)). However, Respondents fail to consider that 8 U.S.C. § 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law," *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), nor does it "strip federal courts of traditional habeas jurisdiction." *Martinez v. Clark*, 124 F.4th 775, 781 (9th Cir. 2024).

Generally, federal courts do not have jurisdiction to review discretionary bond decisions. *See* 8 U.S.C. § 1226(e). Pursuant to the statute:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e).

Although it is true that questions of fact "raised in an application for discretionary relief remain unreviewable," federal courts may nonetheless review habeas challenges to an IJ's application of a legal standard—including the determination of flight risk—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Martinez*, 124 F.4th at 782–83 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221–22 (2024)). Hence, § 1226(e) "precludes federal courts from reviewing 'underlying factual determinations,'" including "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" but does not bar courts from reviewing pure legal questions or mixed questions of law and fact, "even when they are primarily factual[.]" *Id.* at 782–83 (quoting *Wilkinson*, 601 U.S. at 225).

The IJ's determinations of these questions are reviewed for abuse of discretion. *Id.*

---

statutory question is already determined against Plaintiffs under *Hurtado*, and awaiting the BIA's decision would result in irreparable harm to Plaintiffs, prudential administrative exhaustion is excused as futile.").

at 784. The Court "cannot reweigh evidence," but it can determine whether the IJ "applied the correct legal standard." *Id.* at 785 (citation omitted).

For the foregoing reasons, Petitioner's allegation that the IJ abused his discretion when he determined that Petitioner was an "extreme flight risk" despite strong facts to the contrary is a mixed question of law and fact that the Court has jurisdiction to review.

**B. The IJ Abused His Discretion by Denying Bond**.

The Court's review of an IJ's bond determination is limited.[3, 4] When determining whether a noncitizen is a danger to the community or risk of flight, an IJ normally weighs nine factors, pursuant to BIA precedent. *Minango v. Bondi*, No. 2:26-cv-00235-ART-BNW, 2026 U.S. Dist. LEXIS 101189, at *8 (D. Nev. May 6, 2026) (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The nine factors an IJ "'may' consider 'include any or all of the following'":

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the

---

[3] *See supra* section III.A.

[4] The Court in *Peng I* did not explicitly state which party bore the burden of proof at the bond hearing. *See* 2:26-cv-04329-LCK, doc. 10 (D. Ariz. July 6, 2026). Federal courts of appeals are split on whether a petitioner or the government bears the burden of proof at a bond hearing. The First and Second Circuits have held that the government bears the burden of proof. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021) ("We therefore conclude that the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)"); *see also Lopez v. Decker*, 978 F.3d 842, 856–57 (2d Cir. 2020) ("We therefore conclude that the district court's order requiring the Government to prove that Velasco Lopez is a danger to the community or a flight risk by clear and convincing evidence to justify his continued detention strikes a fair balance between the rights of the individual and the legitimate concerns of the state.") (citation omitted). The Third and Fourth Circuits disagree, instead placing the burden upon the Petitioner. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) (finding that placing the burden on a petitioner detained pursuant to § 1226(a) did not violate the Equal Protection Clause); *see also Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (placing burden on petitioner). And, in our own Circuit, "it is an 'open question . . .' as to whether the Constitution requires 'hearings at which the Government bears the burden of proving by clear and convincing evidence that a noncitizen is a danger to the community or a flight risk.'" *Wen Chen v. Hernandez*, No. 2:26-cv-02053-TLF, 2026 U.S. Dist. LEXIS 168805, at *10 (W.D. Wash. July 29, 2026) (quoting *Charan S. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-03017-TLN-JDP, 2026 U.S. Dist. LEXIS 93339, at *12 n.7 (E.D. Cal. Apr. 27, 2026)).

However, because the IJ abused his discretion by relying on insufficient evidence to conclude Petitioner was a flight risk, the Court will assume without deciding that the burden of proof was on Petitioner to prove by a preponderance of the evidence that he was not a flight risk.

> alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at 783 (quoting *Guerra*, 24 I. & N. Dec. at 40).

"An IJ's application of the above standard 'is malleable and involves agency discretion,' but a federal court can still 'assess whether an IJ correctly applied the legal standard to a given set of facts.'" *Garcia-Merino v. Hernandez*, No. 26-cv-1911, 2026 U.S. Dist. LEXIS 164999, at *10–11 (W.D. Wash. July 24, 2026) (quoting *Martinez*, 124 F.4th at 783); *Segura Serrano v. Scott*, No. 2:26-CV-01268-LK, 2026 U.S. Dist. LEXIS 115824, at *13–14 (W.D. Wash. May 26, 2026) (finding there was jurisdiction to review the IJ's determination of flight risk where Petitioner alleged the IJ did not apply the *Guerra* factors correctly); *Zaitsev v. Warden*, No. 2:26-CV-00454-SPG-AS, 2026 U.S. Dist. LEXIS 30181, at *30–31 (C.D. Cal. Feb. 9, 2026) (finding that "[i]n light of *Martinez*, courts may review an IJ's finding that [a noncitizen] poses a flight risk for abuse of discretion");

Here, the IJ's written decisions states that he was denied bond because he was an "extreme flight risk." (Doc. 7-1 at 2.) The IJ based his written decision on the following: (a) Petitioner "was only placed in proceedings in 2023"; (b) Petitioner entered the U.S. without authorization; (c) Petitioner worked in the U.S. without authorization; (d) Petitioner has driven a vehicle without a license; (e) Petitioner's sponsor is his friend whom Petitioner may live with; (f) Petitioner has a nine-year-old son and other family living in the country; and (g) Petitioner was ordered removed from the United States on June 1, 2026—an order which is currently on appeal before the BIA. (*Id.* at 2–3.) The IJ's written decision was supplemented by his oral decision, in which he states:

> Alright, I'm gonna find that [Petitioner] has met his burden to show that he is not a danger. But as to flight risk, I do have significant flight risk concerns. He has been ordered removed. I understand that his uh case is on appeal. The court does take judicial notice that there is over one million people in the United States with final orders of removal. He does have an incentive to stay here because of his family, but that also gives him an incentive to abscond

> from removal should his appeal be denied because he wants to stay here with his family. As such, I'm gonna deny the bond request[.]

(Doc. 10 at 07:31–08:04.)

As an initial point, the Court notes that the IJ—in his written and oral decisions—had not cited every piece of evidence in the record. Nor does he need to. *Cf. Larita-Martinez v. Immigr. & Naturalization Serv.*, 220 F.3d 1092, 1096 (9th Cir. 2000); *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011) ("In particular, where potentially dispositive testimony and documentary evidence is submitted, the BIA must give reasoned consideration to that evidence."). "But when there is an indication that something is amiss, like if the [IJ] 'misstates the record' or 'fails to mention highly probative or potentially dispositive evidence,'" then a court should take notice. *C.A.R.V. v. Wofford*, No. 1:25-cv-01395-JLT-SKO, 2026 U.S. Dist. LEXIS 17595, at *20–21 (E.D. Cal. Jan. 29, 2026).

That is the case here. The IJ failed to consider, much less weigh, the ample evidence presented by the Petitioner. For example, the IJ's decisions, both written and oral, failed to acknowledge evidence such as that Petitioner was the "primary support for his son" who "suffers from . . . a [medical] condition which requires constant monitoring." (Doc. 10 at 03:11–03:53.) The failure to consider such evidence was not inconsequential. Rather, it was an abuse of discretion. *See Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 U.S. Dist. LEXIS 85165, at *15 (S.D. Cal. Apr. 16, 2026) (finding an IJ abused their discretion where the IJ did not consider what the court deemed "highly probative evidence regarding Petitioner's status as sole economic provider for his two-year-old daughter with complex medical needs.").

Moreover, when the IJ did consider highly probative evidence, such as Petitioner's family connections in the country, he discounted such evidence without any explanation—or based on contradictory explanations without an iota of legal or factual support. This failure to consider probative evidence and discounting other probative evidence without explanation is an abuse of discretion. *See Claros v. Albarran*, No. 25-cv-09473-EMC, 2026 U.S. Dist. LEXIS 183803, at *22 (N.D. Cal. Aug. 14, 2026) ("The IJ either did not consider

this evidence or discounted it without explanation. This was an abuse of discretion."). This failure is especially problematic given that a petitioner's "[d]eep ties to [their] children and family are a highly relevant factor in assessing flight risk, even if those ties do not necessarily provide a path to citizenship." *Claros v. Albarran*, No. 25-cv-09473-EMC, 2026 U.S. Dist. LEXIS 183803, at *21 (N.D. Cal. Aug. 14, 2026) (citing *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1143 (D. Idaho 2023) ("While there is no threshold number or exact formula, where the balance of an alien defendant's immediate family—parents, siblings, spouse, and children—reside in the jurisdiction and the United States, and the defendant maintains a close relationship with them, that alien defendant is less likely to flee than another alien defendant who lacks such familial anchors here.")); *cf. Jimenez v. Mullin*, No. 5:26-cv-03624-MBK, 2026 U.S. Dist. LEXIS 157293, at *19 (C.D. Cal. July 15, 2026) ("His wife and two children are United States citizens[.] He has maintained steady employment and is the primary breadwinner for his family[.] He has not sustained any criminal convictions or arrests while he has lived in the United States[.] Yet in finding Petitioner a flight risk, the IJ did not address the evidence of his stable, settled, and law-abiding life in the United States. The IJ's failure to do so was error.") (cleaned up).

Furthermore, the reasons the IJ relied on in finding Petitioner was 'an extreme flight risk' are conditions common to many—if not all—noncitizens residing in the U.S. without express authorization. Specifically, the IJ based his flight risk determination, at least in part, on Petitioner's current order of removal that is on appeal, driving without a license, and employment without authorization. If these conditions were sufficient to establish that a noncitizen poses an 'extreme flight risk,' then most noncitizens residing in the country without authorization would be considered extreme flight risks. Suffice to say, as numerous courts throughout the Ninth Circuit have found, such evidence—"as a matter of law—[can]not establish that [a] Petitioner [is] a flight risk." *Velasquez*, 2026 U.S. Dist. LEXIS 85165, at *14, *16 (regarding an IJ's reliance on the fact that Petitioner was "driving without a license"); *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080–81 (W.D. Wash.

2026) ("Using the IJ's reasoning, any noncitizen applying for Cancellation of Removal who is unauthorized to work and who truthfully provides information about their employment history and tax return filings automatically is at risk of being found a flight risk. Again, this is an illogical conclusion[.]").

*In toto*, the IJ failed to acknowledge highly probative evidence, ignored other probative evidence without explanation, and based his decision on conditions common to all noncitizens residing without authorization in the U.S. These failures are not trivial. Rather, they amount to an abuse of discretion that has violated Petitioner's Fifth Amendment Due Process rights. *See Pawan Kumar Singh v. LaRose*, No. 26-CV-1425 JLS (GC), 2026 U.S. Dist. LEXIS 109736, at *14–15 (S.D. Cal. May 18, 2026) ("The IJ's failure to consider the Guerra factors and reliance on evidence that bears little if any relevance to Petitioner's risk of flight, while seemingly ignoring all evidence in Petitioner's favor, constitutes a misapplication of the legal standard to the facts. . . . [T]he IJ abused her discretion in failing to consider highly probative evidence relating to risk of flight and failing to apply the *Guerra* factors.") (cleaned up); *see also Corona-Saldana v. Scott*, No. 2:26-cv-01347-TMC, 2026 U.S. Dist. LEXIS 120799, at *15 (W.D. Wash. June 1, 2026) ("In sum, the Court concludes that the IJ did not correctly apply the legal standard to a given set of facts[.] The IJ failed to provide a rationale for his finding of flight risk and failed to acknowledge, much less weigh, the ample evidence presented by Petitioner. By failing to accord Petitioner the process due to him, the IJ abused his discretion and violated Petitioner's Fifth Amendment rights.") (cleaned up); *Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (finding that where a "[c]ourt is left to speculate concerning how the [IJ] viewed the evidence in light of the applicable factors," the court "must conclude" that the IJ failed to view the evidence in light of the *Guerra* factors, "which constitutes an abuse of discretion"); *cf. Gimenez v. Hernandez*, No. 2:26-cv-00966-GJL, 2026 U.S. Dist. LEXIS 94446, at *22 (W.D. Wash. Apr. 29, 2026) ("These cases also reflect a more basic principle: bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case. Where

those minimum requirements are not met, a resulting bond denial decision violates due process.”).

## IV. CONCLUSION.

For the foregoing reasons, the Court concludes that Petitioner’s July 10, 2026, bond hearing was legally and constitutionally inadequate. Consequently, the Court must consider what relief Petitioner is entitled to. “Federal courts have a fair amount of flexibility in fashioning specific habeas relief.” *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). In situations where a petitioner’s bond hearing was legally and constitutionally inadequate, some courts within the Ninth Circuit have ordered the petitioner’s immediate release. *See Hernandez v. Hernandez*, No. 2:26-cv-01574-GJL, 2026 U.S. Dist. LEXIS 132964, at *24–25 (W.D. Wash. June 15, 2026) (“The bond hearing at issue was conducted pursuant to a prior grant of habeas relief, in which the Court ordered Respondents to provide Petitioner with a legally sufficient custody determination. . . . Accordingly, the Court concludes that no further immigration bond proceedings are necessary or appropriate.”); *see also Velasquez*, 2026 U.S. Dist. LEXIS 85165, at *18; *Lopez*, 830 F. Supp. 3d at 1103; *Minango*, 2026 U.S. Dist. LEXIS 101189, at *12; *Benipal v. Rokosky*, No. CV-26-01306-PHX-RM, 2026 U.S. Dist. LEXIS 106634, at *2 (D. Ariz. May 14, 2026); *Soriano*, 830 F. Supp. 3d at 1081. Conversely, some have ordered the petitioner to be provided a new bond hearing. *See Kharis v. Sessions*, No. 18-cv-04800-JST, 2018 U.S. Dist. LEXIS 190082, at *32 (N.D. Cal. Nov. 6, 2018); *see also S.E. v. Noem*, No. 1:26-cv-00356-DAD-SCR, 2026 U.S. Dist. LEXIS 65253, at *6 (E.D. Cal. Mar. 26, 2026); *cf. Fabian-Perez v. Rokosky*, No. CV-26-01990-PHX-JJT (JZB), 2026 U.S. Dist. LEXIS 152699, at *3 (D. Ariz. July 10, 2026).

Under the circumstances of the instant action—and especially considering that Respondents have already had ‘one bite at the apple’ to provide Petitioner with a constitutionally adequate bond hearing—“the Court finds no basis for Petitioner’s continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy.” *Soriano*, 830 F. Supp. 3d at 1081.

Accordingly,

**IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (doc. 1) is **GRANTED** as to his request for immediate release from DHS custody.

**IT IS FURTHER ORDERED** that Respondents shall **IMMEDIATELY** release Petitioner from DHS custody.

**IT IS FURTHER ORDERED** that Respondents shall provide a notice of compliance within **THREE (3) DAYS** of releasing Petitioner from DHS custody.

**IT IS FURTHER ORDERED** that any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 9th day of September, 2026.

Honorable John Z. Boyle
United States Magistrate Judge